# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| CURTIS NICHOLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 18-0219-WS-M |
| | ) |
| BUSH HOG, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (doc. 8). The Motion has been briefed and is now ripe.

## I.  Factual and Procedural Background.

The relevant facts and procedural history appear undisputed. Back on October 23, 2013, plaintiff, Curtis Nicholson, by and through then-counsel of record, Donnis Cowart, filed a Complaint (doc. 1-1, at 5-8) against Bush Hog, Inc. in the Circuit Court of Wilcox County, Alabama. In that Complaint, Nicholson alleged that he had worked for Bush Hog as a painter from 1997 until October 20, 2011, when Bush Hog terminated his employment for purportedly sleeping on the job. Nicholson "strongly denie[d] that he was sleeping on the job." (Doc. 1-1, at 6 ¶ 8.) On that basis, Nicholson asserted state-law claims of wrongful termination (on the theory that he was "terminated without good cause" and "without good faith and fair dealing on the part of the Defendant") and breach of unilateral contract (on the theory that Bush Hog made "a specific offer of employment for a continuous period of time" to him through its company handbook and then breached the parties' agreement by firing him without good cause and without good faith and fair dealing). (*Id.* at 6-7.) No other claims or causes of action appeared on the face of Nicholson's Complaint.

Significantly, Nicholson did not perfect service of process on Bush Hog in 2013. To be sure, the court file reflects that plaintiff requested service of the Summons and Complaint via certified mail contemporaneously with filing the Complaint on October 23, 2013, and paid $6.31

in postage for that purpose. (Doc. 1-1, at 9-10.) On November 2, 2013, however, the U.S. Postal Service returned that mailing to the Wilcox County Circuit Clerk, bearing the notation "Return to Sender / Not Deliverable as Addressed / Unable to Forward." (*Id.* at 12.)[1] The record contains no evidence and no indication that Nicholson ever attempted to serve process on Bush Hog through any means at any other time between October 2013 and February 2018.

The "Case Action Summary" maintained by the state Alacourt electronic filing system reflects no docket activity in the case from the "Return of Non Service" on November 15, 2013, until the court set the matter for Status Review to be held on February 22, 2018, well over four years later. (Doc. 1-1, at 2.) On February 16, 2018, plaintiff's current counsel, Al Jones, filed a Notice of Appearance (doc. 1-1, at 14) with the Wilcox County Circuit Clerk, as well as a motion to continue the Status Review (*id.* at 19). As grounds for the motion, Jones indicated that Nicholson "was without representation for some time," that Jones "was recently retained on the case," that Jones had a scheduling conflict with the present setting of the Status Review conference, and that "[t]he Defendant has not been served and would suffer no prejudice." (*Id.* at 19.) The relief sought in the motion to continue was that the court (i) "continue the case until the status docket" and (ii) "additionally allow ninety (90) days for service of the complaint upon the Defendant before dismissal." (*Id.*) On February 20, 2018, Circuit Judge Pettaway entered an Order stating in its entirety as follows: "MOTION TO CONTINUE filed by NICHOLSON CURTIS is hereby GRANTED. Case reset to 5/9/18 at 9:00 a.m." (Doc. 1-1, at 28.) The February 20 Order neither acknowledged nor addressed Jones' request for a 90-day extension to serve process on Bush Hog.

Plaintiff finally, successfully served the Summons and Complaint on Bush Hog via certified mail delivered to its registered agent for service of process in Alabama on February 22,

---

[1]     It is not clear why the U.S. Postal Service was unable to deliver the certified mailing to Bush Hog at the address provided. In summary judgment briefing, defendant suggests that the problem was that the address provided by plaintiff's counsel improperly included an "Attn:" line below the street address, rather than above it, such that the issue was one of formatting. (Doc. 9, at 7 n.4.) Plaintiff's current counsel suggests, "Plaintiff's original Attorney of Record may have inadvertently misconstrued the address so that it was incorrect, but that is more of a vision problem or may even dyslexia rather than not putting forth a *bona fide* attempt." (Doc. 20, at 2.) No record evidence is presented to support plaintiff's speculative hypotheses for why defendant's address was not formatted properly; therefore, they cannot be credited for summary judgment purposes.

2018. (Doc. 1-1, at 2, 32-33.) On March 23, 2018, Bush Hog filed a motion to dismiss the Complaint for the stated reasons that (i) the Complaint was untimely, because Nicholson did not show a *bona fide* intent to have it served on defendant immediately, and the statute of limitations expired prior to service; (ii) defendant was not timely served with process within 120 days, as required by Rule 4(b), Ala.R.Civ.P.; (iii) plaintiff's excessive delay amounts to failure to prosecute; and (iv) there was no unilateral contract, and Nicholson was an at-will employee who could be fired without cause. (Doc. 1-1, at 39-53.) As part of his response to the motion to dismiss, Nicholson purported to file an "Amendment to Complaint," which read in its entirety as follows: "Plaintiff amends the original complaint by right, and adds racial discrimination as a cause of action, stating that his actions on the job were no different than any other employed Caucasian employee, by Defendant, and he was singled out and accused of sleeping, when he clearly was not sleeping." (Doc. 1-1, at 72-73.) On May 7, 2018, Judge Pettaway entered an Order stating, "Upon Consideration of the Pleadings, Defendants' Motion to Dismiss is DENIED." (Doc. 1-1, at 79.)

On May 10, 2018, Bush Hog filed a Notice of Removal (doc. 1) removing this action to this District Court. Subject matter jurisdiction was predicated on the federal question provisions of 28 U.S.C. § 1331, with defendant reasoning that Nicholson's race discrimination claim presents a federal question because it must be asserted under 42 U.S.C. § 1981 and/or Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* Bush Hog now moves for summary judgment, principally on grounds of timeliness. Plaintiff opposes the motion.

**II.      Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party

has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.* at 1086 (citation omitted); *see also Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1318 (S.D. Ala. 2011) (recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).

### III. Analysis.

As noted, Nicholson's original Complaint filed on October 23, 2013 purported to assert two contract-based claims against Bush Hog relating to the October 27, 2011 termination of his employment. First, the Complaint alleged a claim of wrongful termination predicated on the notion that Nicholson was fired "without good cause" and "without good faith and fair dealing." Second, the Complaint alleged that Bush Hog "through its company handbook made Plaintiff a specific offer of employment for a continuous period of time," which Nicholson accepted "by performing his duties throughout his employment," and that Bush Hog breached that agreement by firing Nicholson "without good cause" and "without good faith and fair dealing."

As a threshold matter, Bush Hog argues that both of these claims must be dismissed as untimely. Under Alabama law, the limitations period for contract actions is six years. *See* Ala. Code § 6-2-34(9) ("[t]he following must be commenced within six years: … Actions upon any simple contract"); *Cockrell v. Pruitt*, 214 So.3d 324, 330 n.2 (Ala. 2016) ("The statute of limitations for a breach-of-contract claim is six years."). On its face, the Complaint alleges that Bush Hog breached its purported contract with Nicholson by firing him without cause in October 2011. Nicholson filed his Complaint in October 2013, well within the requisite six-year

limitations period. Nonetheless, defendant contends these claims are untimely because of plaintiff's extreme delay in serving process on defendant. The record confirms that service of process was not perfected on Bush Hog until February 2018, more than four years after the Complaint was filed and some four months after expiration of the six-year limitations period prescribed by § 6-2-34(9). In so arguing, Bush Hog relies on a line of Alabama authority providing that the filing of a complaint does not commence an action for limitations purposes unless there was a *bona fide* intent to have it served promptly. *See, e.g., ENT Associates of Alabama, P.A. v. Hoke*, 223 So.3d 209, 214 (Ala. 2016) ("For statute-of-limitations purposes, the complaint must be filed and there must also exist a *bona fide* intent to have it immediately served.") (citations, internal marks and emphasis omitted). "The question whether such a *bona fide* intent existed at the time the complaint was filed must be determined by an objective standard." *Id.* (citation omitted).

Defendant's record evidence shows the following: Nicholson, by and through counsel, filed the Complaint against Bush Hog in Wilcox County Circuit Court on October 23, 2013. On the same date, Nicholson made a written request to the Wilcox County Circuit Clerk for service of the Summons and Complaint by certified mail. (Doc. 1-1, at 9.) Contemporaneously, Nicholson paid postage of $6.31 for the Clerk to serve Bush Hog via certified mail at a specific address in Montgomery, Alabama. (*Id.* at 10.) There is no evidence that the service address was incorrect; however, it appears that Nicholson erroneously formatted it by placing the "Attn:" line below the street address line. On October 28, 2013, the Clerk mailed a certified envelope to Bush Hog using the exact address provided by Nicholson and the exact postage paid by Nicholson. (*Id.* at 12.) Apparently because of the aforementioned formatting error, however, the U.S. Postal Service returned the mailing to the Clerk, marked "Return to Sender / Not Deliverable as Addressed," on or about November 2, 2013. (*Id.*) All of these facts, taken in the aggregate, are indicative of a *bona fide* intent by plaintiff to have the defendant served immediately. After all, the Alabama Supreme Court has formulated the following rule:

> "[A] *bona fide* intent to have [an action] immediately served can be found when the plaintiff, at the time of filing, performs all the tasks required to serve process. … On the other hand, when the plaintiff, at the time of filing, does not perform all the tasks required to effectuate service and delays a part of the process, a lack of the required *bona fide* intent to serve the defendant is evidenced."

*Precise v. Edwards*, 60 So.3d 228, 233 (Ala. 2010) (internal quotation marks omitted).

Here, the record appears to show that Nicholson, at the time of filing, performed all the tasks required to serve process on Bush Hog. He arranged for issuance of a Summons. He made a written request for service by certified mail. He provided the Clerk with an address for Bush Hog. And he paid the certified mail postage fees. All of these facts evidence a *bona fide* intent to serve Bush Hog immediately, in accordance with the rule in *Precise*. To be sure, it appears that Nicholson formatted Bush Hog's mailing address improperly, as a result of which service failed. But there is no evidence and no reason to believe that Nicholson intentionally mis-formatted the address or otherwise sabotaged the October 2013 service attempt; rather, it appears that he simply made a formatting mistake in writing out the proper address for the Clerk of Court. Such an error is in no way indicative of a lack of *bona fide* intent to serve. Therefore, under straightforward application of the rule in *Precise*, the Court cannot find that plaintiff lacked a *bona fide* intent to serve defendant where, at the time of filing, Nicholson performed all the tasks required to serve process. Defendant is not entitled to summary judgment on the theory of lack of *bona fide* intent causing untimeliness of the contract-related claims for limitations purposes.[2]

Next, defendant argues that the contract claims should be dismissed because plaintiff failed to serve process on defendant within the 120-day period prescribed by Rule 4(b),

---

[2] In moving for summary judgment on this ground, Bush Hog focuses on Nicholson's four-plus years of inactivity after the certified mailing was returned as undeliverable in November 2013. (Doc. 9, at 7-9.) This argument is unpersuasive because the *Precise* rule focuses on the sufficiency of the plaintiff's actions "at the time of filing," not his acts or omissions weeks, months or years later, after the first service attempt fails. All that matters under *Precise* is whether Nicholson had the requisite intent on October 23, 2013, when the Complaint was filed. Nothing about Nicholson's conduct at the time of filing supports a finding that he lacked *bona fide* intent <u>at that time</u> to serve Bush Hog immediately. Similarly, Bush Hog suggests that Nicholson flunked the *Precise* test because "he did not provide a proper address and was immediately informed of his error." (Doc. 9, at 8.) By all appearances, however, the address was accurate, but was simply formatted incorrectly. Defendant offers no authority for the proposition that one should infer lack of *bona fide* intent to serve from a mere formatting error in the address provided. And while defendant insists that Nicholson "was immediately informed of his error," there is no record evidence that such was the case; indeed, the record does not establish when plaintiff learned that the service attempt was unsuccessful, and certainly does not demonstrate that plaintiff received such notice "immediately," particularly when the U.S. Postal Service did not return the mailing to the Clerk as undeliverable until November 2, 2013, at the earliest.

Ala.R.Civ.P.[3] That rule provides, in relevant part, as follows: "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative, after at least fourteen (14) days' notice to the plaintiff, may dismiss the action without prejudice … or direct that service be effected within a specified time; provided, however, that if the plaintiff shows good cause for the failure to serve the defendant, the court shall extend the time for service for an appropriate period." Rule 4(b), Ala.R.Civ.P. The parties have cited – and the Court's research has located – little Alabama authority construing Rule 4(b); however, Alabama's Rule 4(b) was "borrowed from Fed.R.Civ.P. 4(m)" effective August 1, 2004. *See Committee Comments to Amendment to Rule 4 Effective August 1, 2004*. As such, it is instructive to look to decisional authority interpreting the federal Rule 4(m), from which the Alabama rule was sourced.

On its face, Rule 4(b) requires that the service period be extended upon a plaintiff's showing of good cause for the failure to serve. Nicholson has made no such showing of good cause. At best, plaintiff offers various rationales (unsupported by the record) that his "original attorney had become unable to practice law and Plaintiff was unaware," and that his original attorney "may have inadvertently misconstrued the address." None of these explanations constitute even a plausible reason – much less good cause – for Nicholson's failure to perfect service on Bush Hog over a period spanning more than four years from October 2013 until February 2018. With even minimal diligence, attentiveness or effort, Nicholson could and should have realized that his original attorney was no longer involved, and should have served Bush Hog years earlier than he did. Given plaintiff's extreme level of neglect and dilatoriness, "good cause" is plainly lacking here.

That said, the Eleventh Circuit has explained that "Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause," with a variety of factors being considered. *Horenkamp v. Van Winkle and Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005). For example, a district court may exercise discretion to extend the

---

[3] As the Alabama Supreme Court has recognized, "the question whether a complaint is <u>timely served</u> pursuant to Rule 4(b) is distinct from the question whether a plaintiff <u>timely commenced</u> his or her action for statute-of-limitations purposes by possessing, at the time the complaint is filed, the *bona fide* intent to have the complaint immediately served." *ENT Associates*, 223 So.3d at 218.

time for service where a dismissal without prejudice would effectively foreclose the plaintiff's claim because the applicable statute of limitations would bar a refiled action. *See id.* While the Court does weigh that factor here, a critical circumstance in the extension analysis is the prejudice to Bush Hog occasioned by Nicholson's unexplained delay in service. Courts have properly exercised discretion to deny extensions of service periods where the defendant has shown prejudice arising from the delay. *See, e.g., Zapata v. City of New York*, 502 F.3d 192, 198 (2nd Cir. 2007) (opining that district court may "deny an extension solely based on the prejudice to the defendant arising from the statute of limitations," where it is "obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period," and absent good cause, courts cannot ignore "that the situation is the result of the plaintiff's neglect").[4] Bush Hog shows prejudice by pointing out that David Middlebrooks, the Human Resources Manager involved in Nicholson's termination, no longer works for the company, and defendant would experience hardship in locating Middlebrooks now and pressing him for details of a termination decision that was made nearly seven years ago.[5] Plaintiff's extreme, unexplained delay in service has thus placed Bush Hog in an untenable position and has impaired

---

[4] *See also Kurka v. Iowa County, Iowa*, 628 F.3d 953, 959 (8th Cir. 2010) (in considering whether to grant a discretionary extension under Rule 4(m), a "particularly important" factor is "the possibility of prejudice to the defendant"); *M.K. by and through Barlowe K. v. Prestige Academy Charter School*, 256 F. Supp.3d 532, 538 (D. Del. 2017) (in exercising discretion over whether to extend service time in absence of good cause, courts may consider factors including "prejudice to the defendant"); *Bolus v. Fleetwood RV, Inc.*, 308 F.R.D. 152, 157 (M.D.N.C. 2015) (in deciding whether to extend service time without good cause, relevant circumstances include "the danger of prejudice to the nonmovant" and "the length of delay and its potential impact on the judicial proceedings"); *Diaz-Rivera v. Supermercados Econo Inc.*, 18 F. Supp.3d 130, 135 (D.P.R. 2014) ("Courts consider whether the delay in service prejudices a defendant by affecting or diminishing his or her ability to defend himself or herself."); *DiFillippo v. Special Metals Corp.*, 299 F.R.D. 348, 357 (N.D.N.Y. 2014) ("In deciding whether to grant such an extension, courts balance justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party.") (citations omitted).

[5] The Court recognizes that defendant has provided a copy of an Affidavit signed by Middlebrooks in November 2013; however, such Affidavit says little about the circumstances of Nicholson's termination and the accompanying documentation is not comprehensive in its narrative of the underlying events and decision-making process. (Doc. 9, Exh. C.) Additionally, it is unclear whether defendant has access to the employee who allegedly observed Nicholson sleeping on the job, much less whether that employee has any meaningful recollection today of events that transpired so many years ago.

its ability to defend itself from Nicholson's claims, all because of plaintiff's neglect. Dismissal is appropriate in such circumstances, not only because of the prejudice to Bush Hog but also because of Nicholson's lack of any viable explanation for the four-year service delay. *See, e.g., generally Cardenas v. City of Chicago*, 646 F.3d 1001, 1007 (7th Cir. 2011) (no abuse of discretion in dismissal of complaint for untimely service where plaintiff's counsel "made no attempt to serve [defendant] in the 483 days between removal and the filing of the motion to dismiss" and district court found dispositive "Plaintiffs' lack of diligence … and counsel's inaction in the face of the known serious consequences of his failure to serve an essential party").

In short, the Court makes a specific finding on this record that Nicholson has failed to show good cause for the four-plus year delay in perfecting service of process on Bush Hog. Under applicable law, the Court has discretion to extend the service period in the absence of a good cause showing. Nonetheless, upon careful consideration of all relevant factors (including without limitation the balance of harms between the parties, the length of and reason for the delay, plaintiff's status of being without counsel for approximately one year of the four-year period of delay, and plaintiff's good faith or lack thereof), the Court exercises its discretion not to allow an extension of the Rule 4(b) service period under the facts and circumstances documented in the record. Accordingly, dismissal of the Complaint is proper for plaintiff's failure to perfect service of process within the time prescribed by Rule 4(b), Ala.R.Civ.P.[6]

---

[6] In so concluding, the Court has considered and rejects plaintiff's argument that the state court granted him an extension for service of process. (*See* doc. 20, at 3 ("The Plaintiff has sought an extension of such delayed service, through no fault of his own, and after receiving an order granting such an extension, has timely served the Defendant.").) The record does not reasonably support plaintiff's position that such an extension was granted. In particular, six days before the Status Review scheduled for February 22, 2018, plaintiff's counsel filed a document styled "Motion to Continue," wherein he requested that the state court "continue the above listed case from the status docket" because counsel had been recently retained and had a scheduling conflict with the February 22 setting. (Doc. 1, Exh. A, at 19.) At the end of the Motion to Continue, and *a propos* of nothing, plaintiff's counsel added an unrelated, unsupported request that the state court "additionally allow ninety (90) days for service of the complaint upon the Defendant before dismissal." (*Id.*) In making such a request, plaintiff neither cited Rule 4(b) nor made any showing that might render him eligible for the relief requested under Rule 4(b) (*i.e.*, that there was good cause for his failure to serve Bush Hog within the 120-day period, or that the surrounding facts and circumstances warranted a discretionary extension even in the absence of good cause). On February 20, 2018, Judge Pettaway entered an Order summarily granting the Motion to Continue and resetting the status review until May 9, 2018. (*Id.* at 20.) Nowhere in
(Continued)

Even if Nicholson's four-year delay in effecting service of process on Bush Hog were somehow permissible under Rule 4(b), the Court would nonetheless find that dismissal of the Complaint is warranted for failure to prosecute. The Federal Rules of Civil Procedure provide that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Rule 41(b), Fed.R.Civ.P. Alabama's version of Rule 41(b) is substantively identical. "Dismissal under Rule 41(b) is appropriate where there is a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice." *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999). It is well-settled under both the federal and state iterations of Rule 41(b) that "[t]he failure of a plaintiff to attempt service on a defendant within a reasonable time may amount to a failure to prosecute the action, thus warranting a dismissal of the case." *Edwards v. Hanger*, 197 So.3d 993, 996 (Ala.Civ.App. 2015) (citations omitted).[7]

The Court understands, of course, that dismissal for want of prosecution "should be imposed only in the face of a clear record of delay or contumacious conduct by the plaintiff," and "is a sanction of last resort, applicable only in extreme circumstances, and generally proper only

---

the February 20 Order did the state-court judge acknowledge Nicholson's unrelated request for an extension of time for service of process that he tacked onto the Motion to Continue, much less indicate that the Rule 4(b) request was granted or provide any analysis or discussion of the relevant factors for a Rule 4(b) extension. By all appearances, Judge Pettaway did not consider Nicholson's request for extension of time to serve that was buried in his motion to continue the status review setting, much less adjudicate such request. On this record, then, the Court finds that the state court did not grant Nicholson a 90-day extension to serve Bush Hog in February 2018, and rejects as unfounded plaintiff's assertion that he timely served process on Bush Hog in accordance with the February 20 Order.

[7] *See also Ofisi v. BNP Paribas, S.A.*, 285 F. Supp.3d 240, 243-44 (D.D.C. 2018) (explaining that "dismissal for failure to prosecute due to a delay in service is appropriate … [when] there is a lengthy period of inactivity") (citations omitted); *Seebach v. Beetling Design Corp.*, 46 F. Supp.3d 876, 882 (E.D. Wisc. 2014) ("A court has the discretion to dismiss for want of prosecution if the plaintiff's delay in obtaining service is so long that it signifies failure to prosecute."); *Kick Ass Pictures, Inc. v. Does 1-25*, 939 F. Supp.2d 62, 63 (D. Mass. 2013) ("Failing to make service of process on the defendants in itself suffices for a finding of lack of prosecution.") (citation and internal marks omitted); *Europacific Asset Management Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 351 (S.D.N.Y. 2005) ("It is unquestioned that an 'unreasonable' delay in serving process can constitute a failure to prosecute.") (citations omitted).

where less drastic sanctions are unavailable." *McKelvey v. AT & T Technologies, Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986). On this record, however, the Court readily finds a clear record of willful delay and contumacious conduct (in the form of protracted foot-dragging) by Nicholson. Given plaintiff's extreme delay in undertaking reasonable efforts to serve process on the defendant, the Court also finds that dismissal is appropriate and that lesser sanctions would not suffice. Plaintiff has offered no satisfactory justification that might explain the four years of total inactivity in this case in Wilcox County Circuit Court, during which time he took no action to serve process on defendant or otherwise to prosecute his claims. Under the circumstances presented here, dismissal is appropriate under Rule 41(b) and the inherent powers of this Court for failure to prosecute. Thus, even if dismissal were not warranted based on Nicholson's noncompliance with the time for service prescribed by Rule 4(b), Ala.R.Civ.P., the same result would obtain under a failure-to-prosecute theory pursuant to Rule 41(b).

**IV. Conclusion.**

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact and that defendant is entitled to entry of judgment as a matter of law. Defendant's Motion for Summary Judgment (doc. 8) is **granted**, and this action is **dismissed without prejudice** for failure to serve process on the defendant within the time prescribed by Rule 41(b), Ala.R.Civ.P., and for failure to prosecute.[8] A separate Judgment will enter.

DONE and ORDERED this 13th day of September, 2018.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE

---

[8] In reaching this conclusion, the Court has considered plaintiff's argument that dismissal is inappropriate because "Defendant had every opportunity to file for a default in state court" prior to removal, but instead waited until now. (Doc. 20, at 3.) The Court is aware of no authority – and plaintiff cites none – supporting the premise that a defendant should not be allowed to seek dismissal under Rules 4(b) or 41(b) unless that defendant files such a motion at the earliest possible opportunity.